IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:16-CV-00029-RLV-DCK

| | |
|---|---|
| NILOY, INC. d/b/a NILOY INC., )<br>)<br>)<br>Plaintiff )<br>Counter Defendant, )<br>)<br>v. )<br>)<br>LOWE'S COMPANIES, INC., )<br>)<br>)<br>Defendant )<br>Counter Claimant. )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendant, Lowe's Companies, Inc.'s (Lowe's), Motion to Partially Dismiss. (Doc. 18). Having been fully briefed and considered, Defendant's motion is now ripe for disposition. For the reasons stated below, Defendant's Motion to Partially Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

In 2012, Niloy and Lowe's entered into a Master Professional Services Agreement ("MPSA"). (Doc. 1 at 5; Doc. 18-2). The MPSA established a structure for the delivery of information technology ("IT") consulting services by Niloy to Lowe's. (Doc. 1 at 7-8). Niloy provided its IT consulting services pursuant to Statements of Work (SOW) orders that Niloy and Lowe's jointly drafted. (Doc. 1 at 5; Doc. 18-2 at 11). Each SOW order "include[d], at a minimum, a description of the Services and Deliverables to be provided to Lowe's thereunder and the charges payable by Lowe's in consideration therefor [sic]." (Doc. 18-2 at 11; *see also* Doc. 18-2 at 17 ("The agreed upon fixed prices and/or time and materials charges for [Niloy's] performance of the

1

Services and provision of the Deliverables will be specified within each Statement of Work.")). Niloy's delivery of IT consulting services often required Niloy to hire subcontractors and to have personnel travel to Lowe's facility in Mooresville, North Carolina. (Doc. 1 at 8). In addition to paying for Niloy's IT consulting services, Lowe's agreed to reimburse Niloy for travel expenses so long as Niloy both obtained Lowe's prior written consent for the expenses and submitted the expenses in compliance with Lowe's expense and travel policy. (Doc. 1 at 6; Doc. 18-2 at 17). Upon completing a deliverable identified in a SOW order, Niloy submitted an invoice to Lowe's for the preapproved price, charges, and expenses. (Doc. 1 at 8-9).

Niloy and Lowe's intended the MPSA to last for an initial term of one year, with up to four one-year automatic renewals. (Doc. 1 at 6-7; Doc. 18-2 at 26). Either party to the MPSA could terminate the renewal of the agreement upon written notice at least thirty days prior to the renewal date. (Doc. 18 at 26). Lowe's also could terminate the MPSA (1) at any time and without cause if it provided Niloy forty-five business days' advanced written notice; or (2) without notice if Niloy acted negligently or fraudulently, incurably breached the MPSA or a SOW order, or failed to or refused to perform on the MPSA. *Id.* at 26. Finally, Lowe's retained the right to audit Niloy's charges and expenses under any SOW order and either offset any "excessive, unwarranted or misapplied payments . . . against any [then] due or future payments" or seek reimbursement for "excessive, unwarranted and/or misapplied payments." *Id.* at 25.

Niloy and Lowe's operated under the MPSA for approximately a year and a half. (*See* Doc. 1 at 8-9). In February 2014, Lowe's unilaterally terminated the agreement without providing Niloy notice. *Id.* at 9; (Doc 19 at 4). At the time Lowe's terminated the MPSA, Niloy had submitted, but not been paid for, invoices totaling $1,121,667.00. (Doc. 1 at 10; Doc. 19 at 4). Niloy further contends that, between the time of its last submitted invoice and when Lowe's

terminated the MPSA, it performed work and incurred expenses on SOW orders totaling $565,605.13. (Doc. 1 at 13-14). In its answer, Lowe's alleges that a 2014 internal audit showed that it paid Niloy for fifty deliverables on SOW orders that Niloy never provided and that Niloy submitted expenses totaling $910,355.00 that did not comply with the terms of the MPSA or Lowe's expense and travel policy. (Doc. 19 at 11). Based on its audit, Lowe's issued Niloy a demand for reimbursement of $1,417,733.00. *Id.* at 12.

Niloy initiated this case by filing a six count complaint. (Doc. 1). In Count One, Niloy brings suit on an open account and alleges that Lowe's breached the MPSA by unilaterally terminating the MPSA without notice and by failing to pay Niloy for work completed under the MPSA. *Id.* at 14-16. Count Two of Niloy's complaint raises a breach of contract claim on behalf of the subcontractors Niloy hired and seeks to recover damages incurred by the subcontractors as a result of Niloy's inability to pay the subcontractors when Lowe's did not pay Niloy. *Id*. at 16-17. Count Three alleges that Lowe's breached the express covenant of good faith in the MPSA and the implied covenant of good faith and fair dealing that accompanies every contract in North Carolina. *Id.* at 17-18. Count Four raises a claim of unjust enrichment as an alternative theory to Count One in the event that the MPSA is unenforceable or that the MPSA terminated prior to Niloy's completion of all work on SOW orders. *Id*. at 19. In Count Five, Niloy raises an Unfair and Deceptive Trade Practices ("UDTP") claim under N.C. Gen. Stat. § 75-1.1, *et seq*. *Id*. at 20-21. Finally, in Count Six, Niloy seeks attorney's fees and litigation expenses, as permitted by the MPSA and by N.C. Gen. Stat. § 6-21.2. *Id.* at 21-22.

As part of its answer to Niloy's Complaint, Lowe's raises four counterclaims based on Niloy's alleged failure to provide deliverables and its submission of travel expense that allegedly did not comply with Lowe's expense and travel policy. (Doc. 19 at 10-16). In response to Niloy's

Complaint, Lowe's also filed a Motion to Partially Dismiss. (Doc. 18). Lowe's seeks dismissal of the open account aspect of Count One of Niloy's Complaint, as well as the complete dismissal of Counts Two through Five of the Complaint. *Id.*

## II. DISCUSSION

*1. Standard of Review*

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-pled factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Moreover, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal

4

terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 827 (4th Cir. 2010); *see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). However, in assessing the legal sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), a court may rely on a document "integral to and explicitly relied on in the complaint" so long as the non-moving party does not challenge the document's authenticity. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The ability of a court to look at such a document without converting the motion to dismiss into a motion for summary judgment extends to situations where the document is attached to the motion to dismiss rather than the complaint. *Id.*

2.  *Count One: Suit on an Open Account*

As part of Count One, Niloy brings a suit on an open account. (Doc. 1 at 14-16). Lowe's contends that no open account existed between Lowe's and Niloy because each SOW order was a separate transaction and because Niloy's Complaint does not allege that a running balance existed between the parties. (Doc. 18-1 at 6-7; Doc. 30 at 1-2). Niloy contends that an open account existed because all of the SOW orders were performed under the MPSA, the MPSA permitted Lowe's to seek a setoff from the amount it owed Niloy based on prior overpayments, and the MPSA contemplated future dealings beyond any particular SOW order. (Doc. 27 at 8-9).

Under North Carolina law,[1] "an ordinary open account results where the parties [1] intend

---

[1] As the diverse nature of the parties gives rise to this Court's jurisdiction, the Court applies North Carolina choice of law rules, the state where this Court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here,

that the individual transactions are to be considered as a connected series rather than as independent of each other, [2] a balance is kept by adjustment of debits and credits, and [3] further dealings between the parties are contemplated." *Whitley's Elec. Serv., Inc. v. Sherrod*, 238 S.E.2d 607, 611 (N.C. 1977); *see also Hudson v. Game World, Inc.*, 484 S.E.2d 435, 439 (N.C. Ct. App. 1997). A typical hallmark of an open account is the extension of credit between the parties such that the debtor is not under an obligation to immediately pay for any or all work performed. *See Hudson*, 484 S.E.2d at 439 (citing party's purchase of $42,000 of goods over four-month period before making any payments as evidence of open account); *see also Noland Co. Inc. v. Poovey*, 282 S.E.2d 813, 821 (N.C. Ct. App. 1981) (noting establishment of credit line as part of open account), *State Wholesale Supply, Inc. v. Allen*, 227 S.E.2d 120, 122 (N.C. Ct. App. 1976) (noting extension of credit as part of open account). Furthermore, evidence of an intent by the parties to view multiple transactions "as a connected series" exists where the debtee submits a singular bill, for all charges and debts, to the debtor at a regular and cyclical interval. *See Whitley's Elec. Serv., Inc.*, 238 S.E.2d at 610-11 (citing plaintiff's monthly bills to defendant for total balance owed on all work performed as evidence of intent to view work on multiple projects as part of "a connected series"); *see also Noland Co. Inc.*, 282 S.E.2d at 821 (noting that debtor received periodic bills), *State Wholesale Supply, Inc.*, 227 S.E.2d at 122 (noting mailing of monthly statements for total amount due). Finally, the fact that two parties engage in a series of contracts all for the same type of service does not establish an open account relationship if each transaction between the parties is billed and paid individually. *Smith Bros. Trucking of Mt. Airy, Inc. v. Baker Truck Brokerage,*

---

North Carolina substantive law applies because Niloy and Lowe's formed the MPSA in North Carolina and because the MPSA contains a choice of law provision that identifies North Carolina law as the governing law. (*See* Doc. 18-2 at 31); *see also Federated Fin. Corp. of Am. v. Jenkins*, 719 S.E.2d 48, 53 (N.C. Ct. App. 2011) (recognizing validity of choice of law provision); *Musarra v. Bock*, 684 S.E.2d 741, 743 (N.C. Ct. App. 2009) ("[C]ontract disputes are governed by the substantive law of the jurisdiction in which the contract was formed . . . .").

*Inc.*, 2008 WL 4681641, at *3-4 (M.D.N.C. Oct. 21, 2008).

The MPSA provided an overarching structure for how Niloy would perform work for Lowe's. In establishing a year-long initial period of contract, to be followed by up to four one-year automatic extensions, the MPSA clearly contemplated future dealings between Niloy and Lowe's beyond any individual SOW order. Accordingly, Niloy's Complaint contains sufficient factual allegations to satisfy the third factor for finding an open account. The Court concludes, however, that Niloy has not met its pleading burden with respect to the first and second factors for finding an open account and that the terms of the MPSA and the invoices Niloy attached to its complaint defeat its ability to establish an open account.

The SOW orders establish the terms of work for each deliverable. Under the MPSA, and as pled in Niloy's Complaint, each SOW order specified a price for a given deliverable and Lowe's approved the price and the SOW order through a purchase order before Niloy commenced work on the deliverable. (*See* Doc. 1 at 8; Doc. 18-2 at 18, 39). Upon completion of a deliverable, the MPSA required Niloy to submit an invoice to Lowe's for the specific deliverable and the approved price, charges, and expenses as outlined in the respective SOW order. (Doc. 18-2 at 18). Absent a dispute by Lowe's, the MPSA required that Lowe's pay Niloy for the deliverable within thirty days of receiving Niloy's invoice. *Id.* Niloy's pleading regarding the unpaid invoices, as well as the invoices Niloy attached to its Complaint, demonstrate that Niloy followed this procedure and separated out each SOW order when submitting invoices, occasionally submitting multiple invoices on the same day where the invoices pertained to different SOW orders and different purchase orders. (*See* Doc. 1 at 8, 10-11; Doc. 1 at Ex. 1-3). None of the invoices attached to Niloy's Complaint combine amounts due on different SOW orders or purchase orders. (*See* Doc. 1 at Ex. 1-3). Finally, Niloy's Complaint is devoid of any allegation that (1) while the parties

operated under the MPSA, Lowe's failed to pay invoices within thirty days of receipt; (2) it sent Lowe's monthly or regular statements for all charges due; (3) either party kept a running ledger of debits and credits that accounted for all the work performed;[2] or (4) it granted Lowe's a line of credit. (*See* Doc. 1). Accepting all allegations in Niloy's complaint as true, and considering those allegations in light of the terms of the MPSA, Niloy fails to allege sufficient facts to permit a trier of fact to conclude that an open account existed between Niloy and Lowe's. Therefore, Lowe's Motion to Partially Dismiss is **GRANTED** with respect to the open account aspect of Count One of Niloy's Complaint.

*3.     Count Two: Breach of Contract on Behalf of Subcontractors*

Niloy alleges that, when Lowe's terminated the MPSA and failed to pay for already-completed work on SOW orders, it was unable to pay the subcontractors who worked on the deliverables and that it is facing litigation for its failure to pay the subcontractors. (Doc. 1 at 14). In Count Two, Niloy seeks recovery of damages on behalf of the subcontractors. *Id.* at 16-17. Lowe's contends that the Court should dismiss Count Two based on prudential limitations on Niloy's standing to bring claims on behalf of the subcontractors and because the terms of the MPSA bar the claim. (Doc. 18-1 at 7-9). In response, Niloy argues that it has standing to bring the claim because the MPSA prevents the subcontractors from suing Lowe's directly. (Doc. 27 at 9-13 (*citing Metric Constructors, Inc. v. Hawker Siddeley Power Eng'g, Inc.*, 468 S.E.2d 435 (N.C.

---

[2] In response to Lowe's Motion to Partially Dismiss, Niloy argues that the audit provision in the MPSA, which permits Lowe's to take a "setoff" from amounts due to Niloy should Lowe's discover an overpayment on a prior deliverable, demonstrates that the MPSA contemplated a running balance with adjustments of debits and credits. (Doc. 27 at 8-9). Niloy, however, fails to cite any case law for the proposition that a post-audit setoff for overpayment constitutes a "credit" for purposes of finding the existence of an open account. *See id.* A "setoff" is not the same as a "credit." Most appropriate to the context of an open account, the American Heritage Dictionary defines "credit" as "[t]he deduction of a payment made by a debtor from an amount due." *American Heritage Dictionary* 439 (3d ed. 1992). Meanwhile, "setoff" is most appropriately defined as "[s]omething that offsets or compensates for something else; a counterbalance" or "[s]ettlement of a debt by a debtor's establishing such a [counterclaim] against a creditor." *Id.* at 1651. Furthermore, even if a setoff is the same as a credit, the possibility of a post-audit, setoff does not support the conclusion that credits would be kept in the normal course of dealing between Niloy and Lowe's.

Ct. App. 1996)). Niloy further suggests that the provision of the MPSA that shields Lowe's from direct liability for damages to the subcontractors is contrary to North Carolina public policy absent Niloy's ability to bring a claim against Lowe's on behalf of the subcontractors. *Id.* at 11-12 (*citing Metric Constructors*, 468 S.E.2d 435).

Under the MPSA, Lowe's disavowed any responsibility for paying the subcontractors, placing that duty solely on Niloy. (Doc. 18-2 at 16). The MPSA further explicitly disavows the creation of any rights in third parties, including the subcontractors, as against Lowe's and requires Niloy to indemnify and hold Lowe's harmless with respect to any claims raised by Niloy's subcontractors. *Id.* at 28, 33. Finally, the MPSA required Niloy to include in its contract with each subcontractor a provision binding the subcontractor to the terms of the MPSA. *Id.* at 16. In binding subcontractors to the MPSA, Lowe's reserved the right to bring claims directly against the subcontractors for breaches of the MPSA or otherwise unsatisfactory work on deliverables. *Id.* In combination, these plain terms of the MPSA clearly bar Niloy's claim for damages suffered by the subcontractors.

The plain language of the MPSA, however, is not the endpoint of the analysis regarding the viability of Count Two of Niloy's Complaint. Instead, this Court must consider the relevant terms of the MPSA within the context of North Carolina law and determine what effect a North Carolina court would give the terms. This Court's review of North Carolina case law reveals inconsistent results with respect to the ability of a party to bring suit for damages suffered by a subcontractor. *Compare APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*, 431 S.E.2d 508 (N.C. Ct. App. 1993), *Warren Bros. Co., a Division of Ashland Oil, Inc. v. N.C. Dep't of Transp.*, 307 S.E.2d 836 (N.C. Ct. App. 1983), *with Metric Constructors*, 468 S.E.2d 435.

*Warren Bros.* involved a suit by a contractor on behalf of a subcontractor for unexpected

9

costs that the subcontractor incurred when completing a project. *Warren Bros.*, 307 S.E.2d at 837. The contract between Warren Brothers and the North Carolina Department of Transportation (NCDOT) contained a provision that permitted Warren Brothers to hire subcontractors with NCDOT's approval but provided that a subcontractor would not "have any claim against [NCDOT] by reason of [NCDOT's] approval of the subcontract." *Id.* at 838. Based on this provision, the North Carolina Court of Appeals held that Warren Brothers could not bring suit on behalf of a subcontractor where the subcontractor could not bring the claim itself. *Id.* A similar set of facts presented in *APAC-Carolina*, with APAC-Carolina, as well as its subcontractor United Sprinkler, filing suit against the Greensboro-High Point Airport Authority for costs incurred from work that became necessary to complete the project but that was beyond the scope of the pre-bid specifications. *APAC-Carolina*, 431 S.E.2d at 509-10. Included among APAC-Carolina's claims was a claim for damages, in the form of extra work and duration-related costs, suffered by United Sprinkler. *Id.* at 510. Relying on a provision in the contract between APAC-Carolina and the Greensboro-High Point Airport Authority that disclaimed the Airport Authority's recognition of any subcontractors, the *APAC-Carolina* Court applied the general rule that a contractor lacks standing to bring a claim against an owner on behalf of a subcontractor if the subcontractor lacks privity with the owner and could not bring the claim against the owner itself. *Id.* at 511-12. Both *Warren Bros.* and *APAC-Carolina* strongly support the conclusion that the MPSA precludes Niloy from bringing a claim against Lowe's for damages suffered by the subcontractors.

The more recent North Carolina Court of Appeals decision in *Metric Constructors* counsels in favor of the opposite conclusion. In *Metric Constructors*, Hawker Siddeley Power Engineering (HSPE), a general contractor and project designer, hired Metric Constructors (Metric), a first tier subcontractor, to build a power plant. *Metric Constructors*, 468 S.E.2d at 436. Metric, in turn,

subcontracted Electric & Special Systems, Inc. (ESSI) to perform specialized electrical work. *Id.* Metric's complaint alleged that HSPE failed to timely submit drawings for the power plant and revised construction plans mid-build, resulting in delays, cost overruns, and extra work on the part of Metric and ESSI. *See id.* at 437. As part of its complaint, Metric sought damages on behalf of ESSI. *Id.* On the trial level, HSPE moved for a directed verdict on Metric's claim for damages on behalf of ESSI, arguing that Metric lacked standing to bring an action on behalf of ESSI where the contract between Metric and HSPE (1) disclaimed any contractual relationship between HSPE and Metric's subcontractors; (2) disclaimed any obligation on the part of HSPE to Metric's subcontractors; and (3) required Metric to bind its subcontractors to the terms of the contract between HSPE and Metric. *Id.* The trial court denied HSPE's motion, the jury awarded Metric damages on behalf of ESSI, and HSPE appealed. *Id.*

In a two to one decision, the North Carolina Court of Appeals affirmed the trial court's determination, holding that "Metric had standing to recover ESSI's damages as a subset of its own contract damages against HSPE." *Id.* at 438. In so holding, the North Carolina Court of Appeals noted the presence of a fourth clause in the contract, which permitted HSPE to hold Metric liable for the performance of subcontractors on the project. *Id.* at 437-38. This led the *Metric Constructors* Court to conclude that enforcement of the contract between HSPE and Metric, so as to preclude Metric's claim on behalf of its subcontractors, "would work a manifest injustice to Metric, ESSI, and other similarly situated subcontractors" because, under the contract, HSPE simultaneously "shield[ed] itself from any liability for payment to [Metric] for [Metric's subcontractors'] damages while retaining the right to sue [Metric] for the [work performed by Metric's subcontractors]. *Id.* at 439. To avoid this injustice, the North Carolina Court of Appeals interpreted the contract between HSPE and Metric as implicitly intending for damages suffered by

11

Metric's subcontractors to be a subset of Metric's damages. *See id.* at 438. Finally, the North Carolina Court of Appeals distinguished *Metric Constructors* from *APAC-Carolina* by pointing to the fact that ESSI, unlike United Sprinkler, was not a party to the action brought by Metric but instead sought to recover its damages through an independent suit against Metric. *Id.* at 439.

This Court concludes that *Metric Constructors* provides the best guide to whether a North Carolina court would permit Niloy to assert its claim for damages to its subcontractors despite the MPSA's restriction on the claim. The MPSA not only contains a provision disavowing the rights of subcontractors as against Lowe's but also contains the indemnity and subcontractor binding provisions at issue only in *Metric Constructors*. *Metric Constructors*' rationale for permitting a first-tier subcontractor to assert the second-tier subcontractor's damages applies equally to Niloy's ability to assert the subcontractors' damages given the similarities between the MPSA and the contract in *Metric Constructors*. Absent permitting Niloy to bring a claim on behalf of the subcontractors, Niloy would bear full liability to Lowe's for the actions of the subcontractors but Lowe's would bear no liability for damages to the subcontractors caused by its own breach of the MPSA. This creates the same "manifest injustice" that led the North Carolina Court of Appeals in *Metric Constructors* to permit Metric to bring suit on behalf of its subcontractors.[3] Furthermore, as in *Metric Constructors*, none of the subcontractors Niloy seeks damages on behalf of are parties to the suit before this Court and at least two suits have been brought against Niloy. *See Charles Lubin v. DCT Sys. Grp., LLC*, No. 1:13-cv-2206 (N.D. Ga.); *Felipe Priast v. DCT Sys. Grp. Inc.*,

---

[3] Lowe's attempt to distinguish *Metric Constructors* on the basis that *Metric Constructors* involved costs for additional work is to no avail for two reasons. First, it is not apparent why the nature and cause of the damages determines the contractor's standing to bring suit for damages on behalf of a subcontractor. Either the blanket bar to suit in a contract denies or does not deny a contractor standing to bring suit for its subcontractor's damages. Second, *APAC-Carolina* involved a claim for damages as a result of work beyond the bid specifications, *see APAC-Carolina*, 431 S.E.2d at 509-10, such that the fact that damages stemmed from additional work does not account for the differing results in *APAC-Carolina* and *Metric Constructors*. Separately, if the rationale of *Metric Constructors* only applied within the context of subcontractors bringing claims against general contractors, the *Metric Constructors* Court could have easily distinguished *Metric Constructors* from *APAC-Carolina* on that basis.

No. 1:15-cv-00310 (N.D. Ga.). Finally, in reaching this conclusion, this Courts notes that a sister district court in North Carolina recently relied on *Metric Constructors* to permit a contractor to proceed with a claim against an owner for damages on behalf of a subcontractor. *Key Constructors, Inc. v. Harnett Cty.*, 315 F.R.D. 179, 183 (E.D.N.C. 2016). Accordingly, Lowe's Motion to Partially Dismiss is **DENIED** with respect to Count Two of Niloy's Complaint.

*4. Count Three: Breach of Express & Implied Covenant of Good Faith*

Count Three of Niloy's complaint raises a claim for breach of express and implied covenant of good faith and fair dealing. (Doc. 1 at 17-18). With the exception of Niloy's identification of a provision in the MPSA creating the express covenant of good faith, Niloy's allegations in support of Count Three mirror its allegations in support of its breach of contract claim in Count One. (*Compare* Doc. 1 at 14-16, *with* Doc. 1 at 17-18); (*see also* Doc. 27 at 14-15 (Niloy's response brief acknowledging that Count Three is "part and parcel" with Count One)). Lowe's seeks dismissal of Count Three on the ground that it is duplicative of Count One. (Doc. 18-1 at 9-10; Doc. 30 at 4-5). The Court will consider the viability of the express and the implied aspects of the claim separately.

The MPSA contained a "Covenant of Good Faith" clause, under which "[e]ach party agree[d] that, in its respective dealings with the other party under or in connection with the [MPSA], it will act in good faith." (Doc. 18-2 at 33). By alleging that Lowe's falsified the results of its audit and refused to make payments after Niloy provided Lowe's proof that it received all of the requisitioned deliverables, Niloy pled sufficient facts to sustain its contention that Lowe's breached the Covenant of Good Faith clause in the MPSA. However, it is not apparent how Niloy's breach of the express covenant of good faith constitutes more than a claim for a breach of contract given that the claim rests on an explicit provision of the MPSA. Furthermore, Niloy fails

13

to cite any case law recognizing a standalone claim for breach of an express covenant of good faith and this Court's review of North Carolina case law has not uncovered a single case where a party successfully advanced a claim for breach of an express covenant of good faith independent from a breach of contract claim. Therefore, the Court concludes that Niloy's claim for breach of the express covenant of good faith is subsumed by its Count One breach of contract claim and that Niloy may properly advance any theories regarding Lowe's breach of the Covenant of Good Faith clause when pursuing its Count One claim. *Cf. Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 304-05 (N.C. 1985) (discussing breach of covenant clause in contract within the context of a breach of contract claim).

Turning to Niloy's claim for breach of the implied covenant of good faith, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Id.* at 305 (internal quotation marks omitted). When a claim for breach of an implied covenant of good faith is based on factual allegations similar to those alleged in support of a breach of contract claim, the implied covenant claim is "part and parcel" of the breach of contract claim and will rise and fall with the breach of contract claim. *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 368 (N.C. Ct. App. 1996). Furthermore, when a party alleges a breach of contract and a breach of the implied covenant of good faith based on the same set of facts, the party is limited to a single recovery of damages. *Id.* For this reason, courts construe claims for breach of contract and breach of implied covenant of good faith as "duplicative" if the claims arise from the same set of facts. *Rezapour v. Earthlog Equity Grp., Inc.*, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013); *see also Biosignia, Inc. v. Life Line Screening of Am., Ltd.*, 2014 WL 2968139, at * 5 (M.D.N.C. July 1, 2014) ("[T]he weight of North Carolina authority holds that a claim for breach of the covenant of good faith and

fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately."). In such situations, dismissal of the freestanding breach of implied covenant of good faith claim is appropriate. *Biosignia, Inc.*, 2014 WL 2968139, at * 5; *Rezapour*, 2013 WL 3326026, at *4. Accordingly, Lowe's Motion to Partially Dismiss is **GRANTED** as to Count Three of Niloy's Complaint because the allegations and theories alleged in Count Three do not create a freestanding claim for relief but, instead, are properly raised in support of Niloy's Count One breach of contract claim.

5.  *Count Four: Unjust Enrichment*

Count Four of Niloy's complaint raises a claim for unjust enrichment, as an alternative theory to the breach of contract claim in Count One, in the event that the MPSA is deemed unenforceable. (Doc. 1 at 19). Lowe's contends that Niloy's unjust enrichment claim is untenable because an express contract, the MPSA, exists between Niloy and Lowe's. (Doc. 18-1 at 10-11; Doc. 30 at 5-6).

A claim for unjust enrichment arises when one party renders services of benefit to another party and a court applies equitable principles to find an implied-by-law contract because no enforceable or express contract exists between the parties. *Rongotes v. Pridemore*, 363 S.E.2d 221, 224 (N.C. Ct. App. 1988). An implied contract and an express contract cannot co-exist and a party is unable to simultaneously collect damages on a breach of contract claim and an unjust enrichment claim. *Hall v. Mabe*, 336 S.E.2d 427, 429 (N.C. Ct. App. 1985). If an enforceable and express contract exists, an implied contract cannot exist and a claim for unjust enrichment is an untenable cause of action because the terms of the express contract govern the obligations of the parties. *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988).

Despite these limitations on unjust enrichment claims and double recovery, a party is free

to allege inconsistent or alternative theories and, if sufficient proof supports both theories, both theories may be submitted to the jury. *Hall*, 336 S.E.2d at 428-29; *see also* Fed. R. Civ. P. 8(d)(2)-(3). The ability of a party to raise an unjust enrichment claim in the alternative to a breach of contract claim, however, rests on the absence of evidence establishing the existence of an express contract. *FMW/MJH at 2604 Hillsborough LLC v. WSA Const., LLC*, 2014 WL 3748626, at *2 (W.D.N.C. July 30, 2014). Here, Niloy pleads that the MPSA and the SOW orders govern the work it provided on the deliverables giving rise to its unjust enrichment claim. (Doc. 1 at 5-8, 10-11, 19). Lowe's attached a copy of the MPSA to its Motion to Partially Dismiss and represents that it does not contest the enforceability of the MPSA. (Doc. 18-1 at 11; Doc. 18-2; Doc. 30 at 5). However, neither party produced any of the SOW orders. Because the SOW orders include essential terms for each deliverable, including the price of each deliverable, there remains an absence of evidence regarding the existence and enforceability of the alleged contract between Niloy and Lowe's. *See Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp., Inc.*, 697 S.E.2d 468, 472 (N.C. Ct. App. 2010). Although the parties likely will produce the SOW orders during discovery such that dismissal of Niloy's unjust enrichment claim may be appropriate on summary judgment, the SOW orders are not presently before the Court and Lowe's Motion to Partially Dismiss is **DENIED** with respect to Count Four.

6.  *Count Five: Unfair & Deceptive Trade Practice*

Count Five of Niloy's complaint raises an UDTP claim. (Doc. 1 at 20-21). Lowe's, viewing Niloy's UDTP claim as resting entirely on the alleged breach of contract, seeks dismissal of the claim on the ground that Niloy fails to plead the essential elements of an UDTP claim. (Doc. 18-1 at 11-14). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question

16

was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). Niloy's UDTP claim is premised on Lowe's termination of the MPSA without notice, Lowe's failure to pay Niloy for work performed on the MPSA prior to its termination of the MPSA, and Lowe's falsification of its internal audit and its denial of receipt of deliverables. (Doc. 1 at 20-21). Lowe's argues that Niloy failed to plead facts supporting the first and third elements of a UDTP claim. (Doc. 18-1 at 1-14; Doc. 30 at 6-9).

"[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action [for an UDTP]." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) (internal quotation marks omitted). A defendant's decision to contest its liability for an alleged breach of contract also serves as an insufficient basis to sustain a UDTP claim. *See Ace Chem. Corp. v. DSI Transp., Inc.*, 446 S.E.2d 100, 106 (N.C. Ct. App. 1994). To avoid UDTP claims "piggyback[ing]" on breach of contract claims, North Carolina "courts differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contact law." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998). When a plaintiff relies on a breach of contract to advance a UDTP claim, the plaintiff "must show substantial aggravating circumstances attending the breach." *Id.* (internal quotation marks omitted). Conduct sufficient to constitute a substantial aggravating circumstance "has generally involved forged documents, lies, and fraudulent inducements." *Stack v. Abbott Labs., Inc.*, 979 F. Supp.2d 658, 668 (M.D.N.C. 2013). Accordingly, standing alone, Niloy's allegations that Lowe's terminated the MPSA without notice and failed to pay Niloy are insufficient to sustain a UDTP claim. Thus, the sufficiency of Niloy's pleading with respect to its UDTP claim rises and falls on Niloy's allegation that Lowe's falsified its internal audit and claimed

it did not receive deliverables after previously acknowledging receipt of said deliverables.

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). Neither party identifies any North Carolina case law defining immoral, unethical, oppressive, or unscrupulous and this Court's review of relevant case law did not unearth a definition for any of those terms. The dictionary defines "unscrupulous" as "not scrupulous; not restrained by ideas of right and wrong; unprincipled." *Webster's NewWorld Dictionary*, 1556 (2d ed. 1980). Niloy's allegations that Lowe's, for the purpose of creating a reason to seek a setoff and not pay Niloy, falsified its internal audit and denied receiving deliverables are sufficient to meet the threshold for pleading an "unfair" practice because proof of such would demonstrate unprincipled conduct on the part of Lowe's going beyond conduct necessary to effectuate an intentional breach of the MPSA. The alleged conduct, if proven, also constitutes a "substantial aggravating circumstance" because it involves lies and the falsification of accounting records as part of an attempt to defraud Niloy out of payment for work performed on approved and completed SOW orders.

The remaining question is whether Lowe's representations to Niloy regarding the results of its internal audit and the missing deliverables were a proximate cause of any damage to Niloy. The representations occurred subsequent to Lowe's termination of the MPSA and Niloy's Complaint attributes Lowe's decision to terminate the MPSA to Lowe's removal of Lowe's Chief Information Officer. (*See* Doc. 1 at 9-14). Therefore, the representations are not a proximate cause of Lowe's termination of the MPSA. However, Lowe's termination of the MPSA is only one aspect of Niloy's breach of contract claim. Niloy also alleges a breach of contract based on Lowe's failure to pay for work Niloy performed before Lowe's terminated the MPSA. *Id.* at 10-

15. Lowe's audit and the representations Lowe's made to Niloy regarding the audit and the missing deliverables were the proximate cause for Lowe's not paying Niloy for the work Niloy performed prior to Lowe's termination of the MPSA. *Id.* at 10-14; (*see also* Doc. 19 at 11-12). Therefore, Lowe's alleged falsification of its audit and its claim regarding the missing deliverables are plausible as apparent proximate causes of a damage alleged by Niloy. Accordingly, Niloy's Complaint contains sufficient factual allegations to sustain its UDTP claim and Lowe's Motion to Partially Dismiss is **DENIED** with respect to Count Five.[4]

### III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT** Lowe's Motion to Partially Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**:

(1) The Motion is **GRANTED** with respect to the open account aspect of Count One and with respect to Count Three in its entirety;

(2) The Motion is **DENIED** with respect to Counts Two, Four, and Five; and

(3) Niloy may proceed with its Count Six claim for attorney fees and litigation expenses, relative to its claims that survived Lowe's Motion to Partially Dismiss.

Signed: January 3, 2017

Richard L. Voorhees
United States District Judge

---

[4] Although not the subject of Lowe's Motion to Partially Dismiss, Count Six of Niloy's Complaint presents a claim for attorney fees and litigation expenses. (Doc. 1 at 21-22). As Niloy may proceed with its breach of contract claim in Count One and its claims in Counts Two, Four, and Five, its prayer for relief in the form of attorney fees and litigation expenses remains viable in relation to and in proportion to those surviving claims.